**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  1:16-cv-02197-PAB-STV

THERESA SCHIMEK, an individual,

      Plaintiff,

v.

OWNERS INSURANCE COMPANY, an Ohio corporation,

      Defendant.

_____

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND TO ADD CLAIM FOR
EXEMPLARY DAMAGES**
_____

Plaintiff Theresa Schimek ("Ms. Schimek"), by and through counsel, Lewis Kuhn Swan PC and Leventhal Sar LLC, submits her Motion for Leave to Amend to Add Claim for Exemplary Damages ("Motion") as follows:

**CERTIFICATE OF CONFERRAL**

Counsel for Ms. Schimek has conferred in good faith with counsel for Defendant Owners Insurance Company ("Defendant") concerning the relief requested in this Motion. Defendant opposes it.

**INTRODUCTION**

In this Motion, Ms. Schimek seeks leave of Court to amend her Complaint [Dkt. #1] to allow her to add a claim for exemplary damages. Ms. Schimek brings this Motion in accordance with Colo. Rev. Stat. § 13-21-102(1.5)(a). As set out below, Ms. Schimek has adduced sufficient

*prima facie* proof of a triable issue of fact on her entitlement to exemplary damages, and the

Motion should be granted.

Defendant is not prejudiced by the proposed amendment because it does not add a

substantive claim and is based largely on the same facts on which Defendant has been on notice

since Ms. Schimek filed this case. The proposed amendment simply adds a category of damages

the jury may consider should it find in favor of Ms. Schimek on her existing claims.

## FACTUAL BACKGROUND

On August 30, 2016, Ms. Schimek filed her Complaint and asserted one common law

claim relevant to this Motion: bad faith breach of contract (the second claim for relief). *See* Dkt.

#1.  This claim arises from the following facts alleged in the Complaint:[1]

> Schimek is the policy holder of a $500,000 underinsured motorist insurance
> ("UMI") policy underwritten by Auto-Owners. On January 6, 2016, Schimek was
> involved in a motor vehicle accident in which she sustained severe injuries. The
> accident was caused by the acts and omissions of Elizabeth Wynkoop
> ("Wynkoop") who, upon information and belief, resided in Park County,
> Colorado. The collision occurred near mile marker 284 on U.S. Highway 24 in
> Teller County, Colorado.
>
> Schimek was travelling westbound on the highway and Wynkoop was travelling
> eastbound on the highway but was driving in the westbound lanes; phrased
> otherwise, Wynkoop was driving on the wrong side of the highway. Wynkoop's
> vehicle hit Schimek's vehicle head on. Wynkoop died at the scene. Schimek,
> severely injured, was transported to a local hospital.
>
> Wynkoop carried only $50,000 in liability insurance through Bristol West
> Insurance ("Bristol West"), a small insurer based in Oklahoma. Schimek's
> counsel promptly contacted Bristol West and engaged in extensive settlement
> discussions with a claims representative. Settlement negotiations failed. Schimek
> thereafter sought to file a claim against Wynkoop's probate estate. Wynkoop's
> heirs, however, never opened a probate, and Bristol West refused to waive service
> of a complaint on behalf of its insured. This unique situation (*i.e.*, no living person

---

[1] The Complaint referred to Defendant as "Auto-Owners." On November 7, 2016, Ms. Schimek filed an Unopposed
Motion to Substitute Parties and to Amend Caption to change the name of Defendant from "Auto-Owners Insurance
Company" to "Owners Insurance Company." *See* Dkt. #26. This Motion was granted that same day. *See* Dkt. #28.

or estate to sue) left Schimek with two options: (1) open a probate proceeding on behalf of Wynkoop and move to have someone appointed personal representative or special administrator; or (2) accept Bristol West's offer.

In light of the catastrophic nature of the collision, and the fact that Bristol West's offer was close to policy limits, Schimek asked Auto-Owners to consent to a settlement with Wynkoop for the amount offered by Bristol West. Schimek believed such a settlement would allow her to avoid litigating both a probate and litigation matter over a few thousand dollars. Auto-Owners consented to Schimek settling with Wynkoop for less than policy limits.

After settling with Bristol West, Schimek's counsel contacted Auto-Owners to seek benefits for Schimek pursuant to her UMI policy. In particular, Schimek's counsel prepared and forwarded a formal settlement demand and packet of supporting documents, including extensive medical records, to Auto- Owners and requested payment of UMI benefits.

Schimek has suffered significant damages from the collision including past and future medical expenses, emotional distress, and pain and suffering. Despite these damages, Auto-Owners has only offered to pay Schimek $2,500 for her UMI claim. Upon information and belief, Auto-Owners valued Schimek's emotional distress at only a few thousand dollars, despite the fact that an individual died in the collision and Schimek has received extensive treatment for her severe emotional distress.

Auto-Owners's offer is unreasonable on its face and does not factor the damages substantiated by the documentation Schimek provided. Auto-Owners refuses to pay the UMI benefits to which Schimek is entitled.

*See id.*, ¶¶ 5-22.

On November 2, 2016, the Court entered a Scheduling Order that imposed a December 1, 2016 deadline for amendments of pleadings. *See* Dkt. #25. Since that time, the parties have engaged in discovery including depositions of Ms. Schimek and Korrie Cole ("Ms. Cole"), Defendant's claims representative assigned to adjust Ms. Schimek's claim. The parties filed a Joint Motion to Amend Scheduling Order on May 5, 2017 [*see* Dkt. # 34], and the Court granted that Motion that same day. *See* Dkt. #36.

3

**ARGUMENT**

**I.     Ms. Schimek Should Be Granted Leave Pursuant to Fed. R. Civ. P. 15.**

Fed. R. Civ. P. 15(a), which provides for the amendment of pleadings, states that the "court should freely give leave when justice so requires." Courts "refuse leave to amend only on 'a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (*quoting Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)). Viewed against this standard, Ms. Schimek should be granted leave to amend.

Here, the proposed amendment will not cause Defendant any undue prejudice. Defendant has been on notice of all facts supporting a claim for exemplary damages since Ms. Schimek filed her original complaint or had access to the facts because the relevant witnesses have been within Defendant's control (*e.g.*, Ms. Cole). Ms. Schimek did not include a claim for exemplary damages in her Complaint because of the procedural dictates of Colo. Rev. Stat. § 13-21-102(1.5)(a) ("A claim for exemplary damages in an action governed by this section may not be included in any initial claim for relief."). Rather, she waited until now—after the parties have engaged in meaningful discovery, most specifically the deposition of Defendant's claims representative which occurred within recent days—which has confirmed her theory of the case, in addition to demonstrating the factual basis necessary to amend the complaint to seek an additional category of damages. Additionally, Defendant exhaustively explored the events giving rise to Ms. Schimek's bad faith claim during her deposition.

4

For this same reason, there is no evidence Ms. Schimek's proposed amendment is brought in bad faith or with a dilatory motive. Ms. Schimek is not attempting to spring new evidence or a new theory of the case on Defendant. She is, instead, seeking leave to recoup additional damages to which she is entitled for a substantive claim she has previously pled. And as set out below, the claim for these additional damages is not futile—Ms. Schimek has adduced "*prima facie* proof" of a triable issue of fact on her entitlement to exemplary damages. Colo. Rev. Stat. § 13-21-102(1.5)(a). That is all she needs to do.

Moreover, there is no undue delay or prejudice. Trial has not been set, discovery is ongoing, the expert witness disclosure deadline has not occurred, dispositive motions can still be filed, and again, Defendant has been on notice of the facts supporting a claim for exemplary damages since Ms. Schimek filed her original complaint.

**II.  Ms. Schimek Has Established "*Prima Facie* Proof of a Triable Issue" on Her Entitlement to Exemplary Damages.**

The liberal standard regarding motions to amend must be evaluated with Colorado's Exemplary Damages Statute, which provides an exemplary damages remedy as follows:

> In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice or willful and wanton misconduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages.

Colo. Rev. Stat. § 13-21-102(1)(a). The Exemplary Damages Statute defines "willful and wanton misconduct" as "conduct purposefully committed which the actor must have realized was dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Id*. Conduct is "willful and wanton" if it is a dangerous course of action that is consciously chosen, with knowledge of facts, which to a

5

reasonable mind creates a strong probability that injury to others will result. *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007).

"Malice[,]" as used in subsection 102(1)(a), may be inferred from reckless acts of a defendant indicating "disregard of consequences, aside from any intentional malice in the odious or malevolent sense." *Carlson v. McNeill*, 162 P.2d 226, 230-31 (Colo. 1945). Thus, a claim for exemplary damages will lie even in the absence of any evil intent. *See id*. In other words, if the defendant is conscious of its conduct and the existing conditions and should have known that injury would result, the requirements of the Exemplary Damages Statute are met. *Coors v. Security Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005).

In her Motion, Ms. Schimek need only establish "*prima facie* proof" of a triable issue of exemplary damages. *Prima facie* proof of a triable issue of exemplary damages is established by "a showing of a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Stamp*, 172 P.3d at 449. The Colorado Supreme Court has noted "[t]his is a lenient standard." *Id*. at 450. Ms. Schimek need *not* establish the jury will *actually* award exemplary damages. *Prima facie* proof is evidence that, unless rebutted, is sufficient to establish a fact, and it may be established through discovery, evidentiary means, or by an offer of proof. *Id*.

It is the quality of the tortious act, not the wrongdoer's character, that justifies exemplary damages. *See Jones v. Cruzan*, 33 P.3d 1262, 1264 (Colo. App. 2001). Further, the jury may consider the rights of others in assessing the willful and wanton nature (*i.e.*, the reprehensibility) of the defendant's conduct. *See Qwest v. Blood*, 252 P.3d 1071, 1083 (Colo. 2011).

In this case, there is a question of fact of malice, and thus, "*prima facie* proof" of a triable issue of exemplary damages. The Complaint alleges, and new discovery supports, that Defendant

valued Ms. Schimek's underinsured motorist insurance claim at a facially unreasonable sum and has failed to pay the benefits to which Ms. Schimek is entitled. Complaint, ¶¶ 21, 22.

It was the deposition of Ms. Cole, Defendant's claims representative, that is most telling. Despite acknowledging that Defendant has a number of tools to value claims—including examinations under oath, independent medical examinations, private investigators, engineers, a legal team, a home office with "subject matter experts[,]" managers, and peers (Tr. 69:20-23; 83:17–84:13[2])—Ms. Cole admitted that when she valued Ms. Schimek's claim, she did not use an examination under oath (Tr. 84:14-16); did not order an independent medical examination (Tr. 84:17-19); did not use a private investigator (Tr. 84:20-21); and did not even speak with Defendant's home office's in-house experts (Tr. 84:22-23).

Ms. Cole claimed that she "knew what [Ms. Schimek's] injuries were" (Tr. 91:8), but she was unable to credibly explain, much less value financially, any of Ms. Schimek's injuries when they were presented individually. For example, when asked about "[m]uscle spasm, trapezius," Ms. Cole said "I'm not exactly sure because, again, I'm not a doctor." (Tr. 19:19-21.) She did not know anything about, and could not value, "traumatic ecchymosis[.]" (Tr. 20:19-23.) When asked about "phlebitis of [the] right arm[,]" Ms. Cole admitted, "I don't know." (Tr. 21:2-5.) Perhaps most revealing of Ms. Cole's lack of knowledge about the file was her belief that "cervicalgia" had to do with Ms. Schimek's cervix, and thus involved "like her lower body area." (Tr. 20:4-14.) Cervicalgia, had Ms. Cole even fleetingly reviewed the file, is neck pain.

---

[2] Because the deposition of Ms. Cole took place just days ago, a final transcript is not yet available. These transcript quotations and citations are to the rough transcript provided by the court reporter, the relevant pages of which are attached hereto as Exhibit 1.

Ms. Cole further revealed her lack of knowledge of the file when she admitted the list of prescriptions Ms. Schimek had filled did not look familiar. (Tr. 22:6-9; 21-25.) When reviewing the medications in her deposition, Ms. Cole thought that lorazepam, an anti-anxiety medication, was for pain. (Tr. 23:6-9.) She had not done any research to understand that cyclobenzaprine is a muscle relaxant, and that trazodone is for sleep and anxiety. (Tr. 24:7-9; 16-19.)

Even in light of her reckless choice to remain so remarkably unfamiliar with the contents of the claim file, Ms. Cole intentionally refused to consult anyone who did have expertise in the relevant fields. Ms. Cole was asked which medical experts she consulted when valuing the claim, and she responded simply: "none." (Tr. 96:4-9.) Likewise, Ms. Cole refused to consult with any psychological experts when valuing the claim. (Tr. 97:5-8.) Ms. Cole admitted she did not even recall "Googling" the injuries. (Tr. 91:11-13.) Despite repeated admissions of willful ignorance and acknowledgements of failing to carry out even the most rudimentary of investigations, Ms. Cole insisted she "ha[s] a very good understanding of the file[.]" (Tr. 109:14-16.)[3]

Defendant's intentional conduct is also demonstrated by the reckless way in which this claim file was assigned. Ms. Cole testified that she was assigned this claim file—a motor vehicle accident involving a fatality and injuries —by her manager, Chris Hoag ("Mr. Hoag"), in order to be "cross-trained[,]" and that of the "100 to 125 or so claims" she was handling, this was her only motor vehicle accident claim. (Tr. 74:17-75:6.) Ms. Cole had previously handled only two motor vehicle accidents, neither of which involved a fatality or any injuries. (Tr. 75:5-7; 14-16;

---

[3] Despite her willful lack of familiarity with the claim file at the time of the deposition—May 24, 2017, just days ago—what is acutely troubling is that Ms. Cole testified that she spent "[m]aybe 20 hours" preparing for the deposition by "review[ing] the claim file[.]" (Tr. 7:13-25.) This extraordinary amount of time was "independent of the time [Ms. Cole] originally spent processing Ms. Schimek's claim[.]" (Tr. 8:1-4.) If, with an additional 20 hours of preparation, Ms. Cole remained *this* unaware of the crucial details of Ms. Schimek's injuries, both physical and psychological, and treatment, one can surmise how unaware of the facts she was at the time she valued the file.

76:19-24; 76:25-77:3.) One was a parking lot "fender bender." (Tr. 76:10-13.) The other was an incident in which someone hit the door of an unoccupied truck. (Tr. 76:15-21.)

Mr. Hoag, Ms. Cole's manager, intentionally gave a claim file of a motor vehicle accident *involving a fatality* as a training exercise to Defendant's least experienced claims representative. He could have given it to any of the three other claims representative, all of whom worked for him, and all of whom had more experience with motor vehicle accidents. (Tr. 57:15-58:3; 77:4-12.) Ms. Cole testified that she believed all of them had experience—unlike her—with motor vehicle accidents involving injuries and fatalities. (Tr. 77:13-18.) It was also Ms. Cole's very first underinsured motorist claim. (Tr. 106:19-23.) Yet Defendant intentionally assigned to Ms. Cole the claim file of so serious an accident as a training exercise.

But Mr. Hoag hardly "trained" Ms. Cole during her valuation of Ms. Schimek's file. Ms. Cole testified that his "training" was merely for him to be "available for questions[.]" (Tr. 108:23-109:1.) Despite knowing that Ms. Cole never handled a motor vehicle accident claim file involving injuries (much less serious injuries, and certainly not a fatality), and despite knowing that Ms. Cole had never handled an underinsured motorist claim, Mr. Hoag intentionally chose not to approve or even to review Ms. Cole's valuation of Ms. Schimek's claim. (Tr. 108:12-22.) There was no supervision over Ms. Cole's valuation of Ms. Schimek's claim whatsoever.

Acting through its employees, Defendant's consistent, sustained refusal to adequately investigate and value the claim—in the reckless fashion outlined above—surely rises to the level of "conduct . . . done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Colo. Rev. Stat. § 13-21-102(1)(a). This, by statutory definition, meets the standard of "willful and wanton misconduct." *Id.*

In the context of insurance bad faith, Defendant's misconduct, "attended by circumstances of . . . willful and wanton [behavior]," is exactly what exemplary damages were designed to deter and punish. Accordingly, the Motion should be granted. The jury may ultimately conclude Ms. Schimek has failed to demonstrate that Defendant's conduct rises to the level necessary to impose exemplary damages. But the members of the jury should be allowed to make that decision because Ms. Schimek has met the "lenient standard" to have them resolve the matter. *Stamp*, 172 P.3d at 450.

WHEREFORE, Ms. Schimek respectfully requests the Court grant the Motion and grant her leave to add a claim for exemplary damages.

Dated this 30th day of May, 2017.

*/s/ Sean B. Leventhal*
Sean B. Leventhal
Jonathan S. Sar
LEVENTHAL SAR LLC
50 South Steele Street, Suite 450
Denver, CO 80209
Telephone:    (303) 372-6140
Facsimile:    (888) 446-8602
sleventhal@leventhalsarlaw.com
jsar@leventhalsarlaw.com

Paul F. Lewis
Michael D. Kuhn
Andrew E. Swan
LEWIS | KUHN | SWAN PC
620 North Tejon Street, Suite 101
Colorado Springs, CO 80903
Telephone:    (719) 694-3000
Facsimile:    (866) 515-8628
plewis@lks.law
mkuhn@lks.law
aswan@lks.law

*Attorneys for Plaintiff*

4838-2167-3801, v. 2

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2017, I electronically filed the foregoing using the

Court's CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Sean B. Leventhal*

11