# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02197-PAB-STV

THERESA SCHIMEK,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,

    Defendant.
_____

# ORDER
_____

Magistrate Judge Scott T. Varholak

    This matter is before the Court on Plaintiff's Motion for Leave to Amend to Add Claim for Exemplary Damages (the "Motion") [#37]. The Motion has been referred to this Court. [#38] This Court has carefully considered the Motion, related briefing, the case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED**.

**I.    Background**

    On January 6, 2016, Plaintiff Theresa Schimek was involved in a motor vehicle accident caused by non-party Elizabeth Wynkoop. [#1 at ¶¶ 6-7] Ms. Wynkoop was driving on the wrong side of the highway, resulting in a head-on collision between Plaintiff's car and Ms. Wynkoop's car. [*Id.* at ¶¶ 8-9] Ms. Wynkoop died at the scene, and Plaintiff was transported to a local hospital. [*Id.* at ¶ 9] Plaintiff contends that she

suffered "significant damages from the collision including past and future medical expenses, emotional distress, and pain and suffering." [*Id.* at ¶ 18]

At the time of the accident, Ms. Wynkoop had a liability insurance policy with a $50,000 limit through non-party Bristol West Insurance, and Plaintiff had a $500,000 underinsured motorist policy underwritten by Defendant Owners Insurance Company. [*Id.* at ¶¶ 5, 10; #26] Defendant was notified of the accident on January 7, 2016, and the claim was assigned to Korrie Cole, a Field Claim Representative for Defendant. [#42-1 at ¶¶ 1, 6; #43-2 at 34]

In a letter dated April 26, 2016, Plaintiff's counsel notified Defendant of a possible underinsured motorist claim. [#42-1 at ¶ 10] On June 28, 2016, Plaintiff's counsel provided Defendant with a copy of Plaintiff's demand letter to Wynkoop's insurer, which made a demand for $335,000, and the final settlement offer from Wynkoop's insurer. [#42-1 at ¶ 14; #42-3 at 5] On July 21, 2016, Defendant provided its consent for Plaintiff to settle with Ms. Wynkoop's insurer for less than the policy limits and requested additional documentation in support of Plaintiff's demand. [#42-1 at ¶ 15; 43-2 at 5] On August 10, 2016, Plaintiff's counsel provided Defendant with additional documentation in support of her claim and requested "a good faith offer to settle" the uninsured motorist claim by August 19, 2016. [#42-1 at ¶ 16; #43-2 at 3] Ms. Cole requested 30 days to review the additional documentation and Plaintiff's counsel agreed. [#43-2 at 3]

Defendant valued Plaintiff's total damages at $52,500 and thus, on August 24, 2016, extended a settlement offer of $2,500 (having subtracted the $50,000 limit of Ms. Wynkoop's policy) to settle the uninsured motorist claim. [#42-1 at ¶ 22; #43-2 at 2-3] Plaintiff filed the instant lawsuit on August 30, 2016, asserting the following three claims

for relief: (1) breach of insurance contract, (2) common law bad faith breach of contract; and (3) violations of Colorado's insurance regulations, Colorado Revised Statute §§ 10-3-1115 and 10-3-1116. [#1] On November 2, 2016, the Court entered a Scheduling Order, which set December 1, 2016 as the deadline for the joinder of parties and amendment of pleadings. [#25 at 7]

On May 30, 2017, after the parties had conducted substantial discovery, Plaintiff filed the instant motion seeking leave to amend her complaint to add a claim for exemplary damages as additional relief for her common law bad faith breach of contract claim. [#37 at 1-2; #43 at 11] On June 14, 2017, Defendant filed its opposition brief responding to the Motion. [#42] Plaintiff filed a Reply in support of the Motion on June 21, 2017. [#43]

## II. Legal Standard

After the deadline for the amendment of pleadings established by a scheduling order has expired, a party seeking leave to amend "must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard" for amending pleadings. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)).

Federal Rule of Civil Procedure 16(b)(4) allows modification of a scheduling order "only for good cause and with the judge's consent." "Demonstrating good cause under the rule 'requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay.'" *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (quoting *Minter v. Prime*

3

*Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006)); *see Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co.*, 300 F.R.D. 678, 681 (D. Colo. 2014). "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Gorsuch, Ltd.*, 771 F.3d at 1240 (quotations omitted). "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Id.* On the other hand, "[i]f the plaintiff knew of the underlying conduct but simply failed to raise tort claims, [ ] the claims are barred." *Id.*

Pursuant to Federal Rule of Civil Procedure 15(a)(2), the Court is to freely allow amendment of the pleadings "when justice so requires." The grant or denial of an opportunity to amend is within the discretion of the Court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993).

Pursuant to Colorado law, a request for "exemplary damages . . . may not be included in any initial claim for relief" but rather may be asserted "by amendment to the pleadings only after the exchange of initial disclosures . . . and the plaintiff establishes prima facie proof of a triable issue." COLO. REV. STAT. 13-21-102(1.5)(a). In order to obtain exemplary damages, a plaintiff must prove that "the injury complained of is

4

attended by circumstances of fraud, malice, or willful and wanton conduct." COLO. REV. STAT. 13-21-102(1)(a). Pursuant to the statute, willful and wanton conduct "means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." COLO. REV. STAT. 13-21-102(1)(b).

## III. Analysis

Defendant does not argue that Plaintiff lacks good cause for seeking to amend the Complaint to add a claim for exemplary damages after the deadline for the amendment of pleadings set in the Scheduling Order. As noted above, Colorado law does not allow a plaintiff to assert a claim for exemplary damages in the initial pleading, but rather requires the plaintiff to make a *prima facie* offer of proof—which often requires the plaintiff to obtain evidence through discovery—to obtain leave to add a claim for exemplary damages. The Court thus finds good cause pursuant to Rule 16(b)(4) for Plaintiff seeking leave to add the exemplary damages claim after the deadline.

Defendant argues instead that Plaintiff's request to add a claim for exemplary damages should be denied as futile because (1) Plaintiff has failed to offer evidence sufficient to make the *prima facie* showing required by the statute and (2) Plaintiff may not recover both enhanced damages under the penalty statute, Colorado Revised Statute § 10-3-1116, and exemplary damages under Section 13-21-102.[1] [#42]

---

[1] Section 10-3-1116 provides that a claimant "whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit."

5

### A. *Prima Facie* Showing of Willful and Wanton Conduct

"Prima facie proof of a triable issue of exemplary damages is established by a showing of a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) (quotation omitted). "Such proof may be established through discovery, by evidentiary means, or by an offer of proof." *Id.* "Prima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact." *Id.* The Supreme Court of Colorado has instructed that this is "a lenient standard." *Id.* at 450.

Plaintiff argues that she has asserted a *prima facie* case by submitting evidence that Ms. Cole, Defendant's representative handling the claim, was inexperienced, did not understand Plaintiff's injuries, did not investigate Plaintiff's injuries, and did not obtain approval for the amount offered from her supervisor or a more experienced claims representative prior to extending the offer to Plaintiff. Plaintiff offers the following evidence to support these contentions:

- Prior to June 2015, Ms. Cole had no experience with the valuation of insurance claims. [#43-1 at 17-18]

- Between June 2015, when she began her position as a claims representative, and January 7, 2016, when she was assigned Plaintiff's claim, Ms. Cole predominately handled non-automotive, property insurance claims and was assigned Plaintiff's claim to "cross-train" her on automotive claims. [*Id.* at 20-21]

- Prior to handling Plaintiff's claim, Ms. Cole had only handled two automotive claims—neither of which involved a personal injury or an uninsured motorist claim. [*Id.* at 22, 35]

- Prior to handling Plaintiff's claim, Ms. Cole had never handled any claim involving a fatality. [*Id.* at 21]

- At her deposition, Ms. Cole was unable to define many of the medical terms used to identify Plaintiff's injuries. [*Id.* at 2-3]

- At her deposition, Ms. Cole could not identify the purpose of several of the medications taken by Plaintiff. [*Id.* at 5-7]

- Ms. Cole had no training in psychology, anatomy or physiology. [*Id.* at 10-11]

- Ms. Cole did not utilize certain investigative tools available to her—she did not conduct an examination under oath, did not use an independent medical examination, did not consult an outside medical expert, and did not use a private investigator. [*Id.* at 24; #42-2 at 8]

- The claims file does not indicate that Ms. Cole completed any research regarding Plaintiff's injuries and, when asked at her deposition whether she had done so, Plaintiff responded that she "also can use [her] own experience." [#43-2; #43-1 at 29]

- During her valuation of Plaintiff's claim, Ms. Cole spoke to only one of the other, more experienced claims representatives about the file—only once and "in passing." [#43-1 at 23, 25-26]

- Although Ms. Cole spoke with her supervisor "on several occasions" regarding Plaintiff's claim, Ms. Cole did not indicate that any of those discussions related to the valuation of Plaintiff's claim and none is documented in the claim file. [#42-2 at 8-9]

- Ms. Cole testified that her supervisor did not "approve" the valuation of Plaintiff's claim, because Ms. Cole "ha[d] authority to handle the file, evaluate it, and make settlement offers." [#43-1 at 36-37]

- Ms. Cole testified that the valuation of noneconomic injuries is "very subjective" and her evaluation process involved "taking into consideration everything about the file" and also her "experience with other bodily injury claims that [she's] handled" outside of the automotive context. [#42-2 at 9]

In addition to this factual evidence, Plaintiff proffers the opinions of her expert witness, Jeremy Sitcoff, who has been involved in insurance-related matters since 1998. [#43-3] Mr. Sitcoff states that industry standards require an insurer to investigate "the extent of the insured's injuries and other damages." [#43-3 at 6] According to Mr. Sitcoff, industry standards do not permit an insurer to make "a lowball settlement offer and compel the insured to institute litigation to recover amounts reasonably owed;" rather, the insurer's settlement offers "should reasonably reflect the value of the

7

insured's losses." [*Id.* at 7] Mr. Sitcoff stated that Defendant's $2,500 settlement offer was "far below any reasonable amount" and "represents unreasonable conduct in violation of insurance industry standards." [*Id.* at 9] Mr. Sitcoff further opines that Defendant's conduct in offering this unreasonable amount "was purposeful and intentional or, alternatively, a reckless disregard [sic] its obligation to pay benefits due to [Plaintiff]." [*Id.* at 8]

The Court finds that the proffered evidence "unless rebutted, is sufficient to establish" that Defendant's conduct in making the $2,500 settlement offer—described by Plaintiff's expert as "far below any reasonable" offer—was willful and wanton. In addition to Plaintiff's expert's opinion on this point, the evidence supports a finding that Ms. Cole may not have conducted a fulsome investigation of Plaintiff's injuries. At her deposition, Ms. Cole seems to acknowledge that she did not have an understanding of all of Plaintiff's prescriptions and that she did not research the specific medical terms used to describe Plaintiff's injuries. Although Ms. Cole testified that she used her own experience to evaluate the worth of Plaintiff's claims, a trier of fact may determine that Ms. Cole did not have sufficient experience with the type of injuries Plaintiff experienced to allow her to make a reasonable valuation of Plaintiff's claim without further investigation. Such a conclusion would be bolstered by Ms. Cole's lack of prior experience with an automotive personal injury claim or any claim involving a fatality. Although Ms. Cole states that her valuation was based upon her prior "experience with other bodily injury claims," it is unclear what relation, if any, the injuries in those claims bore to Plaintiff's injuries. The proffered evidence—although it may ultimately be rebutted—is sufficient to allow a trier of fact to conclude that Ms. Cole "heedlessly and

8

recklessly, without regard to" Plaintiff's rights reached an unreasonable valuation of Plaintiff's claim. Put differently, the trier of fact may conclude that Ms. Cole was "conscious of [her] conduct and the existing conditions and knew or should have known that injury [in the form of an underpayment of benefits] would result." *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005).

Defendants contend that the proffered facts,[2] "even if they were true, would not rise to the level to establish *prima facie* evidence of malice and/or willful and wanton conduct." [#42 at 13] Defendant, however, fails to provide any analysis or authority to support this statement. Instead, Defendant attempts to refute Plaintiff's proffered evidence by providing additional context from Ms. Cole's deposition testimony and offering an affidavit from Ms. Cole prepared in connection with Defendant's opposition to the instant Motion. [*Id.* at 13-15] Defendant fails to establish that there is a lack of evidentiary support for any of the factual contentions it challenges.

First, Defendant contends that there is no evidence to support Plaintiff's contention that the offered settlement was "facially unreasonable" [*Id.* at 13], but Plaintiff has offered Mr. Sitcoff's opinion on this point as well as evidence that Defendant valued Plaintiff's claim at $52,500 compared to Plaintiff's demand of $335,000.

Second, Defendant contends that "there was simply no time for [Ms. Cole] to employ" investigatory techniques, because Plaintiff initiated this lawsuit without making a counteroffer six days after Defendant submitted its initial settlement offer. [*Id.* at 14]

---

[2] Plaintiff submitted its proffer of Mr. Sitcoff's expert testimony with its reply and thus this additional evidence is not addressed in Defendant's opposition brief. Defendant, however, submitted its own expert's report with its opposition brief and has not sought to strike or otherwise respond to Plaintiff's inclusion of Mr. Sitcoff's testimony with her Reply.

Similarly, Defendant contends there was no time for Ms. Cole to consult a medical expert. [*Id.* at 15] To the extent such investigatory techniques were necessary, however, Defendant offers no explanation for why Ms. Cole did not initiate them prior to making the initial offer and the record is devoid of any evidence that Plaintiff ever refused any request by Ms. Cole for additional time to evaluate Plaintiff's claims. To the contrary, the claim file indicates that Plaintiff's counsel agreed to Ms. Cole's request for 30 days to review the additional documentation provided by Plaintiff on August 10, 2016. [#43-2 at 3] Despite that agreement, Ms. Cole provided Plaintiff the settlement offer only fourteen days later.

Third, without citation to any specific testimony, Defendant contends that "[b]oth in her deposition (the parts Plaintiff failed to cite) and in her affidavit, Ms. Cole was very clear that she understood the nature and extent of Plaintiff's injuries and took these facts into account in evaluating Plaintiff's claim." [#42 at 14-15] But, Defendant fails to adequately address the testimony Plaintiff did cite. The trier of fact may find that testimony—in which Ms. Cole was unable to explain specific terminology and medications identified in Plaintiff's medical records—relevant to its determination of the sufficiency of Ms. Cole's knowledge of Plaintiff's condition.

Finally, Defendant contends that Ms. Cole's lack of experience does not support a finding of willful and wanton conduct, because she had experience evaluating bodily injury claims and she reviewed her valuation of the claim with her supervisor before submitting it to Plaintiff. [*Id.* at 15] As discussed above, however, the relevance, if any, of Ms. Cole's prior experience with bodily injury claims is unclear. In her Affidavit, Ms. Cole states only that she "had handled claims that involved bodily injuries" prior to

handling Plaintiff's file. [#42-1 at ¶ 5]  She does not establish that any of those claims involved similar injuries.  Moreover, Ms. Cole admitted at her deposition that she had not previously handled a claim involving a fatality or an automobile injury, which indicates she may not have handled a claim involving the type of PTSD and anxiety suffered by Plaintiff after the accident. Although Ms. Cole contends in her affidavit that she reviewed the settlement offer with her supervisor, it does not state that the supervisor provided any input with regard to the valuation of Plaintiff's claims or that Ms. Cole accepted any feedback provided by her supervisor.  Ms. Cole's deposition testimony indicates that she may not have discussed valuation of the claim with her supervisor and that she did not submit the offer to him for approval.

Defendant thus, at best, has highlighted factual disputes between the parties with regard to Plaintiff's proposed claim for exemplary damages.  The Court declines Defendant's invitation to resolve these disputed issues of fact.  "[A]t this stage of the litigation, the Court is only concerned with whether the evidence, when viewed in the light most favorable to Plaintiff, is sufficient to make out a *prima facie* case of willful and wanton behavior for the purpose of allowing Plaintiff to amend [her] Complaint to include exemplary damages, not whether such evidence is sufficient to defeat a motion for summary judgment or to prevail on the issue at trial." *Bituminous Cas. Corp. v. Hartford Cas. Ins. Co.*, No. 12-CV-00043-WYD-KLM, 2013 WL 6676157, at *3 (D. Colo. Dec. 18, 2013).

### B.  Duplicative Recovery

Defendant next argues that Plaintiff is "barred from making recovery for treble damages and punitive damages based on the same set of facts." [#42 at 16]  That

Plaintiff ultimately may be barred from *recovering* both enhanced damages pursuant to Section 10-3-1116 and exemplary damages pursuant to Section 13-21-102, however, is irrelevant to whether Plaintiff may *allege* a claim for both types of damages in her complaint.

The Supreme Court of Colorado expressly acknowledged this distinction in *Lexton-Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 823 (Colo. 1992)—the authority Defendant relies upon. In *Lexton-Ancira*, the court upheld the trial court's determination that the jury's award of punitive damages under one statute was duplicative of the treble damages awarded under a separate statute because both were based upon the same conduct of the defendant and served the same punishment and deterrence goals. *Id.* at 822. Under these circumstances the plaintiff was not entitled to recover both the treble damages and the punitive damages. The court made express, however, that its holding did "not preclude a claimant from filing claims based on other theories of recovery" but rather only precluded a claimant from "receiv[ing] a double recovery from the same act." *Id.* at 823 (citing *Farmers Grp., Inc. v. Williams*, 805 P.2d 419, 427 (Colo. 1991)). *Lexton-Ancira* did not disrupt the court's holding in *Farmers Group* that a plaintiff may assert both a statutory claim for bad faith denial of insurance benefits and a common law claim for tortious bad faith breach of contract. *Farmers Grp., Inc.*, 805 P.2d at 426.

The law thus is clear that a plaintiff may assert claims both for enhanced damages under Section 10-3-1116 and for exemplary damages under Section 13-21-102 based upon a common law bad faith breach of contract claim, even though Plaintiff

ultimately may only be permitted to actually recover damages under one of these theories.[3]

## III. Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Leave to Amend to Add Claim for Exemplary Damages [#37]. Plaintiff shall file its amended complaint adding a claim for exemplary damages on or before **September 4, 2017**.

DATED: August 23, 2017            BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

[3] To the extent Defendant seeks an order of this Court requiring Plaintiff to make an election of remedies, such a request is procedurally defective. Pursuant to D.C.COLO.LCivR 7.1, "[a] motion shall not be included in a response or reply to the original motion" but rather must "be filed as a separate document."